**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TIERRA INTELECTUAL BORINQUEN, INC.** | |
| **Plaintiff,** | **CIVIL ACTION NO. 2:13-CV-38** |
| **v.** | |
| **ASUS COMPUTER INTERNATIONAL, and OFFICE MAX, INCORPORATED.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

TO THE HONORABLE COURT:

COMES NOW, Plaintiff Tierra Intelectual Borinquen, Inc. ("TIB"), through the undersigned attorneys, for its Second Amended Complaint against Asus Computer International ("Asus"), and OfficeMax, Incorporated ("OfficeMax") (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code ("U.S.C.") to prevent and enjoin Defendants from infringing and profiting, in an illegal and unauthorized manner and without authorization and/or consent from TIB, from U.S. Patent No. 7,350,078 (the "'078 Patent"), U.S. Patent No. 7,725,725 (the "'725 Patent"), and U.S. Patent No. 8,429,415 (the "'415 Patent") (attached hereto as Exhibits A, B, and C, respectively) pursuant to 35 U.S.C. §271, and to recover damages, attorneys' fees and costs.

## THE PARTIES

2.      Plaintiff TIB is a corporation organized under the laws of Puerto Rico with its principal place of business at 1414 Aldea St., Suite 402, San Juan, Puerto Rico 00907.

3.      Asus is a corporation organized and existing under the laws of the state of California with its principal place of business at 800 Corporate Way, Fremont, California 94539.  It can be served with process through its agent National Corporate Research, Ltd., at 10 East 40th Street, 10th Floor, New York, New York 10016.

4.      Asus is a wholly-owned subsidiary of Asustek Computer Inc.

5.      Asus is in the business of making, using, selling, offering for sale and/or importing portable computing devices.

6.      OfficeMax is a Delaware corporation with its principal place of business at 263 Shuman Boulevard Naperville, Illinois 60563.   OfficeMax can be served with process through its agent, Corporation Service Company, 2711 Centerville Rd, Suite 400, Wilmington, Delaware 19808.

7.       OfficeMax is in the business of using, selling, offering for sale and/or importing portable computing devices, including those made by Asus.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. §§1 et seq.

9.      This Court has personal jurisdiction over Defendants by virtue of their systematic and continuous contacts with this jurisdiction, as well as because of the injury to TIB and the cause of action TIB has raised, as alleged herein.

10.     Defendants are subject to this Court's specific and   general   personal jurisdiction pursuant to due process and/or the Texas Long-Arm Statute, due to at least

their substantial business in this forum, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this District.

11.     Defendants have conducted and do conduct business within this District, directly or through intermediaries, resellers, agents, or offer for sale, sell, and/or advertise (including the use of interactive web pages with promotional material) products in this District that infringe the '078 Patent, the '725 Patent, and the '415 Patent (collectively, the "Asserted Patents").

12.     In addition to Defendants' continuously and systematically conducting business in this District, the causes of action against Defendants are connected (but not limited) to Defendants' purposeful acts committed in this District, including Defendants' making, using, importing, offering for sale, or selling products which include features that fall within the scope of at least one claim of the Asserted Patents.

13.     Venue lies in this District under 28 U.S.C. §§1391 and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District, and have committed and continue to commit acts of patent infringement in this District.  For example, Defendants have used, sold, offered for sale, and/or imported infringing products in this District.

## **JOINDER**

Defendants are properly joined under 35 U.S.C. §299(a)(1) because a right to relief is asserted against the parties jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and/or selling the same accused products.  Specifically, as outlined in detail below, Defendants are alleged to infringe the

Asserted Patents with respect to the same portable computing devices including, but not limited to Asus TF700 Transformer Pad Infinity.

14.     Defendants are properly joined under 35 U.S.C. §299(a)(2). Questions of fact will arise that are common to all defendants, including for example, whether Defendants' products have features that meet the features of one or more claims of the Asserted Patents, and what reasonable royalty will be adequate to compensate the owner of the Asserted Patents for its infringement.

15.     Defendant OfficeMax uses, sells and/or offers for sale Asus's portable computing products, including but not limited to the Asus TF700 Transformer Pad Infinity. By virtue of this commercial relationship, both offer the same portable computing devices that infringe on the Asserted Patents.

16.     Defendants use, make, sell, offer for sale and/or import portable computing devices that infringe on the Asserted Patents.

17.     At least one right to relief is asserted against these parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product and/or process.

## FACTUAL ALLEGATIONS

### *The '078 Patent*

18.     On March 25, 2008, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '078 Patent, entitled "User selection of computer login" after a full and fair examination.

19.     TIB is presently the owner by assignment of the '078 Patent, having received all right, title, and interest in and to the '078 Patent from the previous assignee

of record. TIB possesses all rights of recovery under the '078 Patent, including the exclusive right to recover for past infringement.

20.     The '078 Patent contains five independent claims and eighteen dependent claims.

21.     The inventions described in the '078 Patent include a computer-implemented method for creating a signature for subsequent authentication.

22.     The computer-implemented method includes receiving user selection of at least one signal type among a plurality of selectable signal types.   The computer implemented method includes recording input data of at least one signal type from at least one user-selected input device among a plurality of selectable user input devices. Such a signal type comprises a category, among a plurality of possible categories, of measurable variable input associated with at least one user-selectable input device. At least one user-selectable input device affords recording a plurality of signal types.

23.     This computer-implemented method also includes creating a signature comprising, at least in part, a portion of said input data of said user-selected signal types.

24.     The computer-implemented method includes storing said signature.

*Defendants' Infringement of the '078 Patent*

25.     Portable computing products sold and/or offered for sale by Defendants, including but not limited to the Asus TF700 Transformer Pad Infinity, (the "Infringing Products") perform a computer-implemented method for creating a signature for subsequent authentication.

26.     The computer-implemented method performed by the Infringing Products includes receiving user selection of at least one signal type among a plurality of selectable signal types. The Infringing Products, including but not limited to, the Asus TF700 Transformer Pad Infinity, have a menu that allows users to select a mode (signal

type), among several, to unlock the product. For example, the user may select the face recognition, password, pin, pattern, or slide mode (selectable signal types) to unlock the product.

27.     The computer-implemented method performed by the Infringing Products includes recording input data of at least one signal type from at least one user-selected input device among a plurality of selectable user input devices.  Once the user has selected a mode to unlock the product, the product then prompts the user to provide a certain data that varies depending on the mode selected. For example, if the user selects the password mode, the input would consist of a series of characters entered using the touch screen. In this example, this series of characters is subsequently used to verify the user, thus unlocking the product. In another example, if the user selects the face recognition mode, the input would consist of an image of the user's face captured with the product's camera. In this example, the image of the user's face is subsequently used to verify the user, thus unlocking the product.

28.     The signal types selected in the previous examples comprise a category, among a plurality of possible categories, of measurable variable input associated with at least one user-selectable input device from at least one user-selected input device among a plurality of selectable user input devices. The password mode uses the touch screen as an input device, while the face recognition mode uses the camera as an input device.

29.     The computer-implemented method performed by the Infringing Products includes at least one user-selectable input device that affords recording a plurality of signal types. For example, the touch screen (input device) can be used to record a password, pin, or patterns (signal types) depending on the mode selected.

30.     The computer implemented method performed by the Infringing Products includes creating a signature comprising at least in part a portion of said input data of said

user-selected signal types. For example, the signature is created using the password entered by the user (in the password mode).

31.     The computer-implemented method performed by the Infringing Products includes storing said signature. For example, the signature created using the password entered by the user (in the password mode) is stored to authenticate the user in subsequent unlock attempts.

### The '725 Patent

32.     On May 25, 2010, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '725 Patent, entitled "User-Selectable Signatures."

33.     TIB is presently the owner by assignment of the '725 Patent, having received all right, title, and interest in and to the '725 Patent from the previous assignee of record. TIB possesses all rights of recovery under the '725 Patent, including the exclusive right to recover for past infringement.

34.     The '725 Patent contains three independent claims and seventeen dependent claims.

35.     The invention described in the '725 Patent include a computer-implemented process for creating a signature based on user input signals from user-selectable input devices.

36.     The patented computer implemented process includes the step of receiving user indication of signature input recording.   The process also includes recording user input signals by type from at least one user-selected device among a plurality of selectable user input devices connected to a single computer.  Such signal comprises a set of related software-recognizable data of the same type received from at least one input device.  In the patented process, a signal type includes a category of measurable variable

input associated with at least one user-selectable input device.     At least one user-selectable input device affords recording a plurality of signal types.   The process further includes terminating the recording, storing at least a portion of the recording and creating a signature based at least in part upon at least a portion of the stored recording.   Finally, the signature created is stored.

*Defendants' Infringement of the '725 Patent*

37.   Portable computing products sold and/or offered for sale by Defendants, including but not limited to the Infringing Products, perform a computer-implemented process for creating a user- selectable signature.

38.   The computer-implemented method performed by the Infringing Products includes receiving user indication of signature input recording.   The Infringing Products, including but not limited to the Asus TF700 Transformer Pad Infinity, have a menu that allows users to select a mode (i.e., signal type), among several options, to unlock the screen of the device. For example, the user may select the face recognition, password, pin, pattern, or slide mode (i.e., selectable signal types) to unlock the screen of the device.

39.   The computer-implemented method performed by the Infringing Products includes user input signals by type from at least one user-selected device among a plurality of selectable user input devices connected to a single computer.   When operating the Infringing Products, once the user has selected a mode to unlock the product, the product then prompts the user to provide certain data, which varies depending on the mode selected.   For example, if the user selects the password mode, the input would consist of a series of characters entered using the touch screen.     In this example, this series of characters is subsequently used to verify the user, thus unlocking the screen.   In another example, if the user selects the face recognition mode, the input would consist of an image

of the user's face captured with the product's camera.  In the second example, the image of the user's face is subsequently used to verify the user, thus unlocking the product.  In performing this step, the device's camera serves as input device.

40.   The signal types selected in the previous examples comprise a category of measurable variable input associated with at least one user-selectable input device.

41.   The computer-implemented process performed by the Infringing Products includes at least one user-selectable input device that affords recording a plurality of signal types.   For example, the touch screen (input device) can be used to record a password, pin, or patterns (i.e., a plurality of signal types) depending on the user's selection.

42.   The computer-implemented process performed by the Infringing Products includes creating a signature based at least in part upon at least a portion of the stored recording.  For example, the signature is created using the password entered by the user (e.g., password mode).

43.   The computer-implemented process performed by the Infringing Products includes storing said signature.  For example, the signature created using the password entered by the user (e.g., password mode) is stored in order to authenticate the user in subsequent unlock attempts.

### *The '415 Patent*

44.   On April 23, 2013, the USPTO duly and legally issued the '415 Patent, entitled "User-selectable signatures" after a full and fair examination.  The '415 Patent is valid and enforceable.

45.   TIB is presently the owner by assignment of the '415 Patent, having received all right, title and interest in and to the '415 Patent from the previous owner.  TIB

possesses all rights of recovery under the '415 Patent, including the exclusive right to recover past infringement.

46.     The '415 Patent contains one independent claim and 16 dependent claims.

47.     The invention described in the '415 Patent includes a computing device which provides secured access.

48.     The computing device includes a program memory, a data storage memory, and first and second input devices which are selectable by a user to allow the user to generate a reference signature that can be compared to a future submitted signature for authentication purposes to allow it to be determined whether access to the computing device should be granted based on the user selection, wherein at least one of the first and second user selectable input devices is of a type of input device other than a keyboard.

49.     The computing device of the '415 Patent further includes a processor operatively interfaced with the program memory, the data storage memory, and the first and second user selectable input devices.

50.     In the computing device of the '415 Patent, a first set of instructions is stored in the program memory such that, when the instructions are executed by the processor, these allow a user to select at least one signal type, among at least two different user selectable signal types, to be received and stored in the memory, the at least two different signal types being associated with the first or second user selectable input devices.

51.     In the computing device of the '415 Patent, a second set of instructions is stored in the memory such that these are adapted to be executed after the first set of instructions has been executed, the second set of instructions, when executed by the processor, causing input data of at least one signal type from the user selected one of the first and second input devices to be generated and then recorded in the data storage memory, a reference signature to be created which comprises in part at least a portion of

the input data recorded in the data storage memory, and the reference signature to be stored

in the data storage memory; and a third set of instructions stored in the program memory

that are adapted to be executed after both the first and second sets of instructions have been

executed, the third set of instructions, when executed by the processor, retrieving the

reference signature from the data storage memory and comparing it to a subsequent

signature submission signal to allow a determination to be made as to whether access to the

computing device should be granted.

*Defendants' Infringement of the '415 Patent*

52.    Defendants' products, including but not limited to the Infringing

Products, contain all the elements and features of the patented computing device providing

secured access, as described in one or more of the claims included in the '415 Patent.

53.    The computing device marketed, used, and sold by the Defendants, such as

the Asus TF700 Transformer Pad Infinity, includes each and every feature of the patented

device.  For example, the Infringing Product includes a program memory, a data storage

memory, and first and second input devices which are selectable by a user to allow the user

to generate a reference signature that can be compared to a future submitted signature for

authentication purposes to allow it to be determined whether access to the computing

device should be granted based on the user selection, wherein at least one of the first and

second user selectable input devices is of a type of input device other than a keyboard.

Specifically, the Asus TF700 Transformer Pad Infinity has a menu that allows users to

select a mode, among several, to unlock the product (i.e., provide secured access). For

example, the user may select the face recognition, password, pin, pattern, or slide mode

(i.e., other than by using a keyboard) to unlock the product.

54.    The Asus TF700 Transformer Pad Infinity further includes a processor

operatively interfaced with the program memory, the data storage memory, and the first

and second user selectable input devices.  Furthermore, a first set of instructions is stored in the program memory such that, when the instructions are executed by the processor, these allow a user to select at least one signal type, among at least two different user selectable signal types, to be received and stored in the memory, the at least two different signal types being associated with the first or second user selectable input devices.

55.     In the Asus TF700 Transformer Pad Infinity, a second set of instructions is stored in the memory  such that these are adapted to be executed after the first set of instructions has been executed, the second set of instructions, when executed by the processor, causing input data of at least one signal type from the user selected one of the first and second input devices to be generated and then recorded in the data storage memory, a reference signature to be created which comprises in part at least a portion of the input data recorded in the data storage memory, and the reference signature to be stored in the data storage memory; and a third set of instructions stored in the program memory that are adapted to be executed after both the first and second sets of instructions have been executed, the third set of instructions, when executed by the processor, retrieving the reference signature from the data storage memory and comparing it to a subsequent signature submission signal to allow a determination to be made as to whether access to the computing device should be granted.

56.     For example, in the Asus TF700 Transformer Pad Infinity, if the user selects the password mode, the input would consist of a series of characters entered using the touch screen.   In this example, this series of characters is subsequently used to verify the user, thus unlocking the screen.   Furthermore, if the user selects the face recognition mode, the input would consist of an image of the user's face captured with the product's camera. In this second example, the image of the user's face is subsequently used to verify

the user, thus serving as a reference signal to unlocking the product (i.e., providing secured access). In performing this step, the device's camera serves as input device.

## COUNT I: DIRECT INFRINGEMENT OF THE '078 PATENT

57.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-57.

58.    Taken together, either partially or entirely, the features included in the Infringing Products, including but not limited to, the Asus TF700 Transformer Pad Infinity, perform the process recited in one or more of the claims of the '078 Patent.

59.    Defendants directly infringe one or more of the claims of the '078 Patent by making, using, selling, offering to sell and/or importing the computer-implemented method for creating a signature for subsequent authentication described in the '078 Patent in violation of 35 USC § 271(a).

## COUNT II: INDIRECT INFRINGEMENT OF THE '078 PATENT

*Inducing Infringement*

60.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-60.

61.    Defendants have had knowledge of infringement of the '078 Patent at least as of the service of the present complaint.

62.    With knowledge of the '078 Patent, Defendants have infringed and, upon service of the original complaint, continue to indirectly infringe the '078 Patent by actively inducing the direct infringement of a class of actors which includes the Defendants' customers, users and/or licensees who directly infringe by performing the patented computer implemented method in violation of 35 USC §271(b).

63.     Defendants actively induce others, such as their customers, users and/or licensees, to use the Infringing Products, including but not limited to the Asus TF700Transformer Pad Infinity, which perform every step of the process recited in one or more claims of the '078 Patent.

64.     Such use by the Infringing Products performs the computer implemented method identified in one or more of claims of the '078 Patent.  For example, the Asus TF700 Transformer Pad Infinity User Guide instructs, among others, its customers, users, and licensees to perform certain acts by virtue of their use of the Asus TF700Transformer Pad Infinity. Defendants' customers, users, and/or licensees perform those acts when they use the Asus TF700 Transformer Pad Infinity.

65.     Such acts evidence specific intent by the Defendants to induce infringement of the '078 Patent.

*Contributory Infringement*

66.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-66.

67.     Defendants employ authentication methods in their portable computing devices, including but not limited to the Infringing Products, that constitute a component of a patented computer implemented method covered by at least one claim of the '078 Patent. Such component constitutes a material part of the invention. Due to the specific design of such technology, the method is not a staple article or commodity of commerce suitable for non-infringing use. The authentication methods employed by the Infringing Products can only be performed in a way that infringes the '078 Patent.

68.     Defendants have known that the authentication methods employed by their portable computing devices, including but not limited to the Infringing Products, were

especially made or especially adapted for use in infringement of the '078 Patent at least as of service of the original complaint.

69.     With knowledge of the '078 Patent, Defendants have infringed and, upon service of the original complaint, continue to indirectly infringe the '078 Patent by contributing to the direct infringement of a class of actors which their users, customers and licensees, by making, using, selling, offering for sale the authentication method and otherwise encouraging the class of actors to use the Infringing Products which performs all the steps of the patented computer implemented method, aware of the fact that such acts amount to infringement of one or more claims of the '078 Patent in violation of 35 USC § 271(c).

70.     Such acts evidence specific intent to contribute to the infringement of the '078 Patent.

## COUNT III: DIRECT INFRINGEMENT OFTHE '725  PATENT

71.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-71.

72.     Taken together, either partially or entirely, the features included in the Infringing Products, including but not limited to the Asus TF700 Transformer Pad Infinity, perform the process recited in one or more of the claims of the '725 Patent.

73.     Defendants directly infringe one or more of the claims of the '725 Patent by making, using, selling, offering to sell and/or importing the computer-implemented method for creating a user-selectable signature described in the '725 Patent in violation of 35 USC § 271(a).

## COUNT IV:  INDIRECT  INFRINGEMENT OF THE '725 PATENT

*Inducing Infringement*

74.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-74.

75.     Defendants have had knowledge of infringement of the '725 Patent at least as of the service of the original complaint.

76.     With knowledge of the '725 Patent, Defendants have infringed and, upon service of the original complaint, continue to indirectly infringe the '725 Patent by actively inducing the direct infringement of a class of actors which includes the Defendants' customers, users, and/or licensees who directly infringe by performing the patented computer implemented method in violation of 35 USC §271(b).

77.     Defendants actively induce others, such as their customers, users, and/or licensees, to use the Infringing Products, including but not limited to the Asus TF700 Transformer Pad Infinity, that perform all the steps of the process recited in one or more claims of the '725 Patent.

78.     Such use by the Infringing Products performs the computer implemented method identified in one or more of claims of the '725 Patent.  For example, the Asus TF700 Transformer Pad Infinity User Guide instructs, among others, its customers, users, and/or licensees to perform certain acts for using the Asus TF700 Transformer Pad Infinity. Defendants' customers, users, and/or licensees perform those acts when using the Asus TF700 Transformer Pad Infinity.

79.     Such acts evidence specific intent by the Defendants to induce infringement of the '725 Patent.

*Contributory Infringement*

80.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-80.

81.     Defendants' employ authentication methods in their portable computing devices, including but not limited to the Infringing Products, that constitute a component of a patented computer implemented method covered by at least one claim of the '725 Patent. Such component constitutes a material part of the invention. Due to the specific design of such technology, the method is not a staple article or commodity of commerce suitable for non-infringing use. The authentication methods employed by the Infringing Products can only be performed in a way that infringes the '725 Patent.

82.     Defendants have known that the authentication methods employed by their portable computing devices, including but not limited to the Infringing Products, were especially made or especially adapted for use in infringement of the '725 Patent at least as of service of the original complaint.

83.     With knowledge of the '725 Patent, Defendants have infringed and, upon service of the original complaint, continue to indirectly infringe the '725 Patent by contributing to the direct infringement of a class of actors which their users, customers and licensees, by making, using, selling, offering for sale the authentication method and otherwise encouraging the class of actors to use the Infringing Products which performs all the steps of the patented computer implemented method, aware of the fact that such acts amount to infringement of one or more claims of the '725 Patent in violation of 35 USC § 271(c).

84.     Such acts evidence specific intent to contribute to the infringement of the '725 Patent

## COUNT V:  DIRECT INFRINGEMENT OF THE '415 PATENT

85.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-85.

86.     Taken together, either partially or entirely, the features and elements embodied in the Infringing Products, including but not limited to the Asus TF700 Transformer Pad Infinity, meet the each and every element of the computing device recited in one or more of the claims of the '415 Patent.

87.     Defendants directly infringe one or more of the claims of the '415 Patent by making, using, selling, offering to sell and/or importing the computing device providing secured access described in the '415 Patent in violation of 35 USC § 271(a).

## COUNT VI: INDIRECT INFRINGEMENT OF THE '415 PATENT

### *Inducing Infringement*

88.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-88.

89.     Defendants have had knowledge of infringement of the '415 Patent at least as of the service of the original complaint.

90.     With knowledge of the '415 Patent, Defendants have infringed and, upon service of the original complaint, continue to indirectly infringe the '415 Patent by actively inducing the direct infringement of a class of actors which includes the Defendants' customers, users, and/or licensees who directly infringe by performing the patented computer implemented method in violation of 35 USC §271(b).

91.     Defendants actively induce others, such as their customers, users, and/or licensees, to use the Infringing Products, including but not limited to the  Asus TF700 Transformer Pad Infinity, which contain each and every element of the computing device recited in one or more of the claims of the '415 Patent.

92.     Such use of the Infringing Products which meet each and every feature recited in one or more of claims of the '415 Patent infringes the patent.  For example, the Asus TF700 Transformer Pad Infinity User Guide instructs, among others, its customers, users, and/or licensees to perform certain acts for using the Asus TF700 Transformer Pad Infinity. Defendants' customers, users, and/or licensees perform those acts when using the Asus TF700 Transformer Pad Infinity.

93.     Such acts evidence specific intent by the Defendants to induce infringement of the '415 Patent.

*Contributory Infringement*

94.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-94.

95.     Defendants employ authentication methods in their portable computing devices, including but not limited to the Infringing Products, that constitute a component of a patented computer implemented method covered by at least one claim of the '415 Patent. Such component constitutes a material part of the invention. Due to the specific design of such technology, the method is not a staple article or commodity of commerce suitable for non-infringing use. The authentication methods employed by the Infringing Products can only be performed in a way that infringes the '415 Patent.

96.     Defendants have known that the authentication methods employed by their portable computing devices, including but not limited to the Infringing Products, were especially made or especially adapted for use in infringement of the '415 Patent at least as of service of the original complaint.

97.     With knowledge of the '415 Patent, Defendants have infringed and, upon service of the original complaint, continue to indirectly infringe the '415 Patent by contributing to the direct infringement of a class of actors which their users, customers and licensees, by making, using, selling, offering for sale the authentication method and

otherwise encouraging the class of actors to use the Infringing Products which performs all the steps of the patented computer implemented method, aware of the fact that such acts amount to infringement of one or more claims of the '415 Patent in violation of 35 USC § 271(c).

98.     Such acts evidence specific intent to contribute to the infringement of the '415 Patent

## **DEMAND FOR JURY TRIAL**

99.      TIB demands a trial by jury of any and all causes of action.

## **PRAYER FOR RELIEF**

WHEREFORE, TIB prays for the following relief:

1.   That Defendants be adjudged to have infringed the Asserted Patents, directly and/or indirectly, by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents;

2.   That Defendants, their officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly and/or indirectly infringing the Asserted Patents;

3.   An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate TIB for the Defendants' past infringement and any continuing or future infringement up until the date that Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

4.   An assessment of pre-judgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

5. That Defendants be directed to pay enhanced damages, including TIB's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

6. That TIB have such other and further relief as this Court may deem just and proper.

Dated: December 19, 2013                    Respectfully Submitted,

By:
*Of Counsel*
/s/Eugenio J. Torres-Oyola
Eugenio J. Torres-Oyola
USDC No. 215505
**Ferraiuoli LLC**
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: etorres@ferraiuoli.com

William E. Davis, III
Texas State Bar No. 24047416
**The Davis Firm, PC**
111 West Tyler Street
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
Email: bdavis@bdavisfirm.com

**ATTORNEYS FOR
PLAINTIFF TIERRA
INTELECTUAL
BORINQUEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, the foregoing was served on all counsel of record who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d), all others not deemed to have consented to electronic service were served with a true and correct copy of the foregoing via email on this 19th day of December, 2013.

*/s/ Eugenio Torres-Oyola*
Eugenio Torres-Oyola